## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BOARD OF TRUSTEES OF THE ) 
GREATER PENNSYLVANIA ) 
CARPENTERS' MEDICAL PLAN, ) 
            ) 
           Plaintiff, )     Civil Action No. 19-165 
            ) 
          v. )     Judge Cathy Bissoon 
            ) 
RICHARD CLOUSER; and LINDA ) 
KAY CLOUSER, ) 
            ) 
          Defendants. )

## MEMORANDUM ORDER

Pending before the Court are Plaintiff's Motion for Default Judgment against Defendants ("Pl. Mt.," Doc. 12) under Federal Rule of Civil Procedure 55(b)(2) ("Rule 55(b)(2)") and Plaintiff's Motion for Inclusion of Attorneys' Fees and Costs in Default Judgment Against Defendants ("Pl. Att. Fee Mt.," Doc. 13), both filed on August 28, 2019. Both Motions will be granted.

Plaintiff first filed its Complaint on June 10, 2019, against Defendants Linda Kay Clouser ("Ms. Clouser") and Richard Clouser ("Mr. Clouser"), including these allegations: (I) Violation of the terms of the Plaintiff's Medical Plan ("Plan") pursuant to § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"); (II) Equitable Relief Under ERISA § 502(a)(3); (III) Federal common law fraud; (IV) Federal common law negligent misrepresentation; (V) Federal common law unjust enrichment; (VI) Pennsylvania state law fraud; (VII) Pennsylvania state law negligent misrepresentation; and (VIII) Pennsylvania state common law unjust enrichment.

After the period by which Defendants' answer or other motions deadline expired, Plaintiff filed its motions seeking damages of $19,422, representing the cost to Plaintiff of providing health insurance coverage to Ms. Clouser while she was ineligible for coverage due to her divorce from Mr. Clouser.  According to Plaintiff, this number is calculated based on the applicable Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA") rate premiums for the cost of coverage during Ms. Clouser's period of Plan ineligibility. Plaintiff also sought to recover $5,053.75 in attorneys' fees and $1,278.00 in costs.

On August 29, 2019, this Court entered an Order (Doc. 14) requiring Plaintiff to submit a supplement with authority to support its proposed measure of damages, as the Court is charged with "an obligation to assure that there is a legitimate basis for any damage award it enters" under Rule 55(b)(2). Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003); see Rainey v. Diamond State Port Corp., 354 F. App'x 722, 724 (3d Cir. 2009) (plaintiffs who prevail by default are "not automatically entitled to the damages they originally demanded").  Plaintiff filed its Supplement in Support of Motion for Default Judgment Against Richard Clouser and Linda Kay Clouser ("Pl. Supp.," Doc. 15) on September 5, 2019, accompanied by an Affidavit of James Klein [the Administrative Manager for the Plan] in Support of Plaintiff's Supplement for Motion for Default Judgment Against Richard Clouser and Linda Kay Clouser ("Klein Affidavit," Doc. 15-1).

In its Supplement, Plaintiff represents that the $19,422.00 includes both paid claims and the risk that Plaintiff incurred when insuring and providing coverage, reflecting the rate that Defendants would have needed to pay the Plan to receive its benefits after the Clousers' divorce. Pl. Supp. at 3.  The Plan provides coverage for participants based on employer contributions, based on a separate contribution based on a collective bargaining agreement. Pl. Supp. at 4.

However, should a participant no longer qualify for employer coverage because of a qualifying event, such as a divorce of the covered employee from the employee's spouse, the divorced non-employee may still qualify for coverage under COBRA. 29 U.S.C. §1161, 1163; Pl. Supp. at 5. In that case, the former participant would be responsible for paying the applicable premium in order to continue coverage, defined by 26 U.S.C. § 4980B(f)(4)(A)-(C).

According to the Plan's actuarial calculations, the applicable COBRA rate premiums would have been $1,087.00 per month for six months of coverage in 2015, for a total of $6,522.00, and $1,075.00 per month for twelve months of coverage in 2016, for a total of $12,900.00, and $19,422.00 overall for the entire period. Id. at 6-7. Without making her own separate payment, Ms. Clouser would have been ineligible for coverage under the Plan because of her divorce. Defendants did not pay the Plan for any of Ms. Clouser's post-divorce coverage, nor did they make any self-payments to permit a deduction in the cost of coverage provided due to the structure of the Plan. Klein Affidavit at ¶¶10-11, 17.

Plaintiff highlights that this Plan differs from other insurance policies that are not an ERISA, multi-employer, self-funded plan, and thus the Plan's damages should not be discounted for any employer contributions for coverage. Pl. Supp. at 9. Specifically, it notes that Mr. Clouser did not make any self-payments during his period of ineligibility, and Ms. Clouser did not make any self-payments to continue her coverage, and that the Plan bore the sole risk and cost of continued coverage for Ms. Clouser. Id.

On March 24, 2020, the Court entered an Order (Doc. 16) asking Plaintiff to brief the specific issue of why the monetary relief it sought constitutes an equitable remedy permitted by statute, as opposed to a precluded legal remedy. Specifically, the Court directed Plaintiff to

differentiate cases[1] that found that such a remedy was impermissible by statute and by legal precedent. Plaintiff urges the Court to follow the rationale of cases in the Ninth Circuit that found such monetary relief constitutes a permissible equitable remedy under ERISA § 502(a)(3), differentiating a case that found to the contrary in the same circuit.

Although there is no binding precedent supporting Plaintiff's interpretation of the statute in this Circuit, the Court finds Plaintiff's arguments and citations on the issue of equitable relief in the form of monetary recovery for improperly paid medical and prescription benefits, including coverage, persuasive.[2] Namely, the Court finds that Plaintiff is seeking to recoup an actual benefit conferred to Ms. Clouser— the cost for insurance coverage for a period under which she otherwise would have been ineligible without making her own payments, and that

---

[1] The Court notes that this specific scenario has not been contemplated by the Court of Appeals for the Third Circuit. Thus, while Plaintiff cited case law consistent with its arguments in another circuit, the Court asked Plaintiff to provide more briefing based on alternative interpretations within the same circuit of the issue of remedy at law versus equity as it applies to ERISA § 502(a)(3).

[2] The Court notes that the facts of the primary case, Northwest Administrators, Inc. v. Cutter, cited by Plaintiff to be sufficiently like the facts at issue here. Nw. Adm'rs, Inc. v. Cutter, 2008 WL 217731 (W.D. Wash. Jan. 24, 2008), aff'd, 328 F. App'x 577 (9th Cir. 2009), cert. denied, 558 U.S. 1115 (2010). In that case, the defendant represented to the plaintiff plan that he was married to an individual, Ms. Devereaux, who received medical coverage under the defendant's insurance. However, after that individual's death, facts emerged demonstrating that Ms. Devereaux and the defendant were not married. The plaintiff plan filed an action to recover more than $70K in medical benefits paid for her treatment based on equitable restitution under ERISA § 502(a)(3) and three Washington state law claims: fraud, fraudulent misrepresentation, and negligent misrepresentation. The court found that, even though the medical benefits were paid to Ms. Devereaux's medical providers, and not to the defendant, that the ill-gotten gains doctrine in the Ninth Circuit permitted restitution under ERISA § 502(a)(3) for money obtained through fraud or wrongdoing. Mainly, the Court noted that Defendant, fraudulently "appropriated money he was never entitled to" which it called "unjust enrichment with a remedy in equity." Id. at *6. The court emphasizes that funds that are "entirely separate assets from the original benefit conferred by the plaintiffs" is a different scenario where the defendant wrongfully appropriated money. Id. The court also found that all state claims were pre-empted. Id. at 7. Similarly, this Court has also found the state law claims to be pre-empted. See Order at Doc. 16.

4

Plaintiff's allegations constitute "restitution of ill-gotten plan assets or profits" permissible under ERISA. Cutter, 2008 WL 217731, at *6 (W.D. Wash. Jan. 24, 2008) (citing Mertens v. Hewitt Associates, 508 U.S. 248, 260 (1993)). As the Court has found that Plaintiff is entitled to recovery under ERISA § 502(a)(3), it need not reach Plaintiff's federal common law claims and arguments.

As to attorneys' fees, ERISA § 502(g)(1) permits the Court, "in its discretion…[to] allow a reasonable attorney's fee and costs of action to either party." In determining whether to make any award of fees under ERISA, courts generally consider these five policy factors: (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position. Ursic v. Bethlehem Mines, 719 F.2d 670 (3d Cir. 1983). All of this must be considered among the backdrop of reasonableness.

In analyzing the factors, the Court comes to the following conclusions:[3]

(1) Defendants' alleged fraudulent actions weigh in favor of a fee award.

(2) As Defendants have not answered or filed any motions, the Court is unable to determine whether they can satisfy an award of fees.

(3) The Court finds that imposing fees would deter parties from attempting to defraud plans by fraudulently concealing or misrepresenting information.

---

[3] The Court finds the case, Carpenters Pension & Annuity Plan of Philadelphia & Vicinity v. Grosso, informative in conducting this analysis. 2009 WL 2431340, at *7 (E.D. Pa. Aug. 6, 2009) (finding an award of attorneys' fees and costs in a default judgment context).

(4) Restoring the cost of attorneys' fees would benefit the members of the pension plan as a whole, as these are funds "that should not have been diverted in the first place." 2009 WL 2431340 at *7.

(5) As Plaintiff's position "has merit, while [Defendant] has not advanced any position" the relative merits of Plaintiff's position weighs in favor of a fee. Id.

As to reasonableness, the Court finds that the number of hours expended on this litigation (28.75 hours), and the hourly rate of counsel involved ($175.00 for associates and $225.00 for lead counsel), to be reasonable, noting that the billable time was predominantly conducted by associates (28.3 hours). Affidavit for Attorneys' Fees and Costs, Doc. 13-1, at ¶6. The Court also finds that the costs incurred are reasonable. Id. at ¶7.

Consistent with the foregoing, Plaintiff's Motion to for Default Judgment (**Doc. 12**) is **GRANTED**. Plaintiff's Motion for Attorneys' Fees (**Doc. 13**) is also **GRANTED**.

IT IS SO ORDERED.

March 30, 2020                                    s\Cathy Bissoon
                                                 Cathy Bissoon
                                                 United States District Judge

cc (via ECF email notification):

All Counsel of Record